**E-FILED**
Wednesday, 18 August, 2010  10:48:01 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHARON MURRAY and | ) | |
| ANTHONY MURRAY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  10-3097 |
| | ) | |
| JPMORGAN CHASE NA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

This matter comes before the Court on Defendants JPMorgan Chase,

N.A. Chase Auto Finance (JPMorgan), Maria Nisbett, Agnes Morzowski,

Rosetta Last Name Unknown (LNU), and Leota Musto's Motion to Dismiss

(d/e 17).  Pro se Plaintiffs Sharon Murray and Anthony Murray (collectively

the Murrays) bring federal and state claims against the Defendants arising

from the alleged wrongful repossession and sale of the Plaintiffs' 2004

Pontiac Grand Prix GT automobile (Car).  FRCP Rule 7(a)(1) Complaint

and Pleadings (d/e 1) (Complaint).  For the reasons stated below, the

Motion is allowed.

For purposes of this Motion, the Court must accept as true all well-

pleaded factual allegations contained in the Complaint and draw all inferences in the light most favorable to the Murrays. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). When read in that light, the Complaint must set forth a short and plain statement of the claims showing that the Murrays are entitled to relief. Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559-63 (2007); Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663 (7th Cir. 2007). In doing so, the allegations must plausibly suggest that the Murrays are entitled to relief. Twombly, 550 U.S. at 569 n.14. Allegations of bare legal conclusions or labels alone are not sufficient. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). In addition, allegations of fraud and mistake must be pleaded with particularity. Fed. R. Civ. P. 9(b).

## STATEMENT OF FACTS

The Murrays allege that on February 28, 2005, they executed a Retail Installment Contract with Defendant JPMorgan's predecessor, Bank One, to purchase the Car. Complaint Exhibits (d/e 2), Exhibit 1, Retail Installment Contract (Contract). The Contract listed the purchase price at $24,966.34. The Contract called for 60 monthly payments of $357.40. Id.

2

The Murrays made the monthly payments on time or early.  The Murrays often made payments of more that the $357.40 listed in the Contract.  The Murrays made a payment of $367.40 in June 2007. Defendant JPMorgan received and posted the payment on June 13, 2007. Soon thereafter, Defendant Rosetta from JPMorgan's repossession department, called both the Murrays at work on their cell phones to demand the June 2007 payment.  The Murrays went to the local branch of JPMorgan.  Branch manager Agnes Morzowski confirmed that the payment had been received and was posted to the account.  Morzowski made several telephone calls, opened a case, and told the Murrays that they were not in danger of repossession.  Complaint, at 4-5.

Rosetta, however, kept making harassing telephone calls.  The Murrays tried to resolve the confusion, but were unsuccessful.  On August 2, 2007, representatives of JPMorgan repossessed the Car.  The Murrays were wrongfully forced to pay $1,482.20 to Rosetta at JPMorgan, and a $180.00 storage fee to the towing company, to secure the release of the Car. The $1,482.20 included a $390.00 repossession fee.  Morzowski later admitted the error.  Defendant Maria Nisbett, a JPMorgan supervisor, contacted the Murrays and apologized for the inconvenience.  In a series of

3

communications, JPMorgan representatives offered to credit some of the fees to the account. In March 2008, Plaintiff Anthony Murray ultimately accepted JPMorgan's offer to resolve the matter. Anthony Murray was told that, with the credits for reimbursement of fees and expenses, the Murrays' next regular monthly payment would be due May 14, 2008. Id., at 6-7.

In April 2008, Defendant Rosetta charged the Murrays with a $390.00 miscellaneous fee. The Murrays contacted JPMorgan regarding this. Rosetta informed them that she charged the fee because the Murrays never paid the original $390 repossession fee. Plaintiff Sharon Murray discussed this matter with Rosetta, but Rosetta only became abusive and hung up on Sharon Murray. Id., at 7-8.

On July 7, 2008, JPMorgan wrongfully reversed all of the Murrays' payments since 2005 and reapplied them as if the payments had been made on July 7, 2008. As a result, JPMorgan wrongfully charged huge amounts of late fees, penalties, and interest to the Murrays' account. Thereafter, JPMorgan wrongfully deemed the account in default, and Rosetta issued a second repossession order. Sharon Murray started receiving text messages in the middle of the night asking her to come to her back door. She did so one night and found a repossession agent at her back door. She showed him

proof of payment and he left.  Id., at 8-10.

On December 16, 2008, a repossession team banged on the Murrays' back door at 3:00 a.m. demanding the Car.  The repossession team refused to leave.  The police were called.  The police refused to stop the repossession team from taking the Car over the Murrays' objections.  The repossession team took the Car, including the Murray's personal property in the Car. Id., at 10.

The Murrays again contacted JPMorgan representatives including Morzowski and Nisbett, but ended up having to speak to Rosetta again. Rosetta told the Murrays that she would personally see to it that the Murrays would never be in possession of the Car again.  Rosetta stated that she was tired of dealing with the Murrays and did not care if they paid the loan in full; she would not allow them to have the Car, and she no longer wished to do business with them.  JPMorgan then wrongfully sold the Car without notice to the Murrays on April 15, 2009.  Id., at 11-12.

Based on these allegations, the Murrays assert claims under the Fair Debt Collections Practices Act (FDCPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), the Fair Credit Reporting Act (FCRA), and state-law claims.  RICO, 18 U.S.C. § 1962 et seq.; FDCPA, 15 U.S.C.

§ 1692 et seq.; FCRA, 15 U.S.C. §§ 1681 et seq.  The Defendants move to dismiss.

ANALYSIS

I.    PERSONAL JURISDICTION

The first issue is the identity of the Defendants and jurisdiction.  The caption of the Complaint lists three Defendants:  JPMorgan, Rosetta LNU, and Leota Musto, Vice President of JPMorgan.  The body of the Complaint lists two additional Defendants: Agnes Morzowski and Maria Nisbett.  Complaint, at 3-4.  The Murrays served summonses on JPMorgan, Rosetta, Musto, Morzowski and Nisbett.  Summonses Returned Executed (d/e 10-14).  In response to this Court's Text Order entered July 21, 2010, the Murrays confirmed that they assert claims against all five Defendants.  Plaintiff's "Supplemental Memoranda" in Compliance with July 21, 2010 Order Entered By Honorable Jeanne E. Scott, and Response to Defendant's D/E 22 (d/e 23) (Murray Supplemental Response), at 4.

The Complaint alleges that this Court has diversity jurisdiction over the state-law claims.  Complaint, at 3.  The Complaint alleges that the Murrays are citizens of Illinois and that JPMorgan is a citizen of New York and New Jersey.  Complaint, at 3.  The Complaint, however, fails to allege

6

the citizenship of the four individuals named as Defendants.

The Court directed the parties to provide the Court with the citizenship of the Individual Defendants. Text Order entered July 21, 2010. The Defendants informed the Court that Nisbett is a citizen of New York, and Musto is a citizen of Illinois. Supplemental Memorandum and Statement Pursuant to Judge Scott's July 21, 2010 Order (d/e 22), at 4-5. The Defendants stated that Rosetta LNU may be JPMorgan employee Rose Amos. Amos is a citizen of Illinois. Id. The Defendants stated that JPMorgan has no record of an employee named Agnes Morzowski. Id. The Murrays and Defendant Musto, at a minimum, are not diverse because they all are citizens of Illinois. The Court, therefore, lacks diversity jurisdiction over the state law claims because the parties are not completely diverse. 28 U.S.C. § 1332; see Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 992 (7th Cir. 2007).

The Defendants argue that the Court has diversity jurisdiction over the state law claims because JPMorgan is the only real Defendant. The Defendant argues that the other four individual Defendants should be disregarded for purposes of determining jurisdiction. Diversity jurisdiction is based on the citizenship of parties who have a real interest in the outcome

of the case.  Nominal parties are disregarded.  Matchett v. Wold, 818 F.2d 574, 575-76 (7th Cir. 1987).  In this case, all five Defendants are interested. The Complaint alleges that Rosetta, Musto, Morzowski, and Nisbett engaged in conduct that injured the Murrays, and the Murrays seek damages against them individually.  The Complaint asks the Court to award "[a]dditional monetary amount for punitive damages the Court deem (sic) fit against each Defendant individually so that the Defendant(sic) learn to respect property rights of others and be deterred of further misconduct." Complaint, at 18.  See also, Murray Supplemental Response, at 4.  All five Defendants, therefore, are to be considered in determining this Court's diversity jurisdiction.  The Court lacks diversity jurisdiction because the Murrays and Defendant Musto are all citizens of Illinois.

The Court could exercise supplemental jurisdiction over the state law claims because the Murrays have invoked the Court's federal question jurisdiction over their RICO, FDCPA, and FCRA claims.  28 U.S.C. § 1367. As explained below, however, the Murrays fail to state a claim under any of these federal statutes.  The Court, therefore, will dismiss the federal claims with prejudice and, in its discretion, decline to exercise jurisdiction over the state law claims.  See Groce v. Eli Lilly & Co., 193 F.3d 496, 500-01 (7th

8

Cir. 1999).  The Court addresses each federal claim in order.

## II.    THE FEDERAL CLAIMS

### A.    RICO Claim

To state a claim under RICO, the Murrays must allege that the Defendants conducted an enterprise through a pattern of racketeering activity.  Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992).  Racketeering activity is the commission of one or more of the crimes listed in the statute, including mail fraud and wire fraud (collectively fraud), and extortion. 18 U.S.C. § 1961(1).  The Defendants move to dismiss on the grounds that the Murrays allege fraud as the predicate racketeering activity, but do not allege fraud with particularity, as required by Rule 9(b). The Murrays respond that they are not required to plead with particularity to the extent that they allege extortion as the racketeering activity.  The Murrays also argue that their allegations of fraud are sufficient.

The Court does not need to decide whether the Murrays have met the particularity requirement of Rule 9 because they fail to allege a pattern of racketeering activity.[1]  Congress enacted RICO to "eradicate organized,

---

[1]The Court does not address whether the Murrays' allegations are sufficient to allege extortion or fraud.

long-term criminal activity." <u>Midwest Grinding</u>, 976 F.2d at 1019.  Thus, to state a RICO claim, the Murrays must allege that the Defendants are engaged in a pattern of activity that poses a threat of continued criminal activity.  <u>H.J. Inc. v. Northwestern Bell Telephone Co.</u>, 492 U.S. 229, 239 (1989). The Murrays must allege that the predicate criminal acts are related and demonstrate a level of continuity that pose a threat of future criminal activity.  <u>Id.</u>, at 241-42.  The Murrays may allege continuity by alleging either: (1) a closed-end scheme of criminal conduct that has ended, but poses a threat of recurrence, or (2) an open-ended scheme that is on-going. <u>Id.</u>, at 242-243; <u>Midwest Grinding</u>, 976 F.2d at 1022-23.  The Murrays have alleged a closed-end scheme that started in June 2007 and ended in April 2009.  A closed-end scheme presents a threat of future criminal activity if it includes several of the following factors: the alleged criminal activity occurred over a substantial period of time, involved a significant number of victims, involved a variety of predicate acts, included the presence of separate schemes, and resulted in distinct injuries.  <u>Midwest Grinding</u>, 976 F.2d at 1024.  The Murrays fail to allege these factors.  The Murrays were the only victims, the predicate acts were limited to wrongful conduct related to a single retail installment contract, and the predicate acts

did not include separate criminal schemes.  The Murrays essentially allege wrongful conduct arising out of a single contractual relationship.  Such a dispute does not arise to a RICO claim and should be handled in state court. Midwest Grinding, 976 F.2d at 1025 ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour."). The Murrays, therefore, fail to allege a pattern of racketeering necessary to state a RICO claim.  The RICO claim is dismissed.

> B.     FCDPA Claim

The Murrays also fail to state a claim under the FDCPA because the Defendants are not debt collectors.  The FDCPA applies to third party debt collection agencies, not the creditor.  15 U.S.C. § 1692a(4); McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 500 (7th Cir. 2008).  In this case, JPMorgan is the creditor and the other Defendants are JPMorgan employees, not third party debt collection agencies.  The FDCPA, therefore, does not apply.  The claim under the FDCPA is dismissed.

C.    FCRA Claim

The FCRA regulates the process of providing information to credit reporting agencies, disseminating credit reports, and disputing information provided to credit reporting agencies.  15 U.S.C. § 1681 et seq.  The Complaint asks the Court to order the removal of false information from the Murrays' credit reports.  Complaint, at 18.  This prayer, plus other references elsewhere in the Complaint, indicate that the Murrays allege that the Defendants provided false information about them to credit reporting agencies.

The FCRA contains only one provision that regulates persons who provide information to credit reporting agencies.[2]  15 U.S.C. § 1681s-2.  Section 1681s-2(c) authorizes one private cause of action against persons providing information who violate § 1681s-2(b).  15 U.S.C. §§ 1681n, 1681o, & 1681s-2(b)&(c).  Section 1681s-2(b) requires persons providing information to investigate disputed information only after the credit reporting agency notifies the person in writing that the information is disputed.  15 U.S.C. §§ 1681s-2(b)(1)(A) & 1681i(a)(2).  The person

---

[2]Most of the FCRA concerns credit reporting agencies and the persons who use that information to make credit and employment decisions.  15 U.S.C. §§ 1681 through 1681s-1, 1681t through 1681x.

providing the information must then report the results of the investigation to the credit reporting agency.   If the investigation finds that the information is inaccurate or incomplete, the person providing the information must provide the results of the investigation to all national consumer credit reporting agencies.  15 U.S.C. §§ 1681s-2(b)(1)(C)&(D).

The Murrays do not allege a violation of § 1681s-2(b).  The Murrays do not allege that any credit reporting agency notified any Defendant in writing that any information provided to the agency was inaccurate; the Murrays do not allege that any Defendant failed to investigate after receiving such a notice; the Murrays do not allege that any Defendant failed to report the results of any such investigation to the credit reporting agency. The Murrays do not state a claim under the FCRA or any federal statute. The FCRA claim is dismissed.

III.   <u>REQUEST TO RE-PLEAD</u>

The Murrays ask for leave to re-plead.  The Court would typically grant this request; however, in this case, the allegations demonstrate that the Murrays have no federal claim and no amount of re-pleading will change that.  The Murrays have no FCRA claim against the Defendants unless a credit reporting agency notified the Defendants in writing that the

Defendants provided disputed information. 15 U.S.C. §§ 1681s-2(b)(1)(A) & 1681i(a)(2). The Murrays recount their ordeal in detail, but nowhere allege that they contacted a credit reporting agency to dispute any information provided by a Defendant, or that a credit reporting agency notified a Defendant in writing that any information provided was disputed. The fact that the Murrays did not contact a credit reporting agency to dispute the alleged false information means that they have no claim under the FCRA.

The Murrays also establish that they have no claim under the FDCPA. The Murrays allege that JPMorgan and its employees are the alleged wrongdoers and that JPMorgan is the creditor. The creditor, and its employees, are not debt collectors subject to the FDCPA. 15 U.S.C. § 1692a(4); McKinney, 548 F.3d at 500. The Murrays, therefore, have no FDCPA claim.

The Murrays also have no RICO claim. The Murrays' claims arise out of one retail installment contract and the alleged wrongful and fraudulent acts of JPMorgan and its employees to collect money and take property in breach of that contract and in violation of law. Such a run-of-the mill dispute surrounding essentially one secured credit transaction does not

14

implicate RICO.  Cf. Midwest Grinding, 976 F.2d at 1025 ("a run-of-the mill fraud case . . . belongs in state court.").  The Murrays may or may not have alleged state law claims against these Defendants, but they have no federal claims.  Re-pleading will not change that.  The request to re-plead is denied.

The Court also declines to exercise supplemental jurisdiction.  The state law claims are, therefore, dismissed without prejudice for lack of subject matter jurisdiction.

THEREFORE, the Defendants' Motion to Dismiss (d/e 17) is ALLOWED.  The federal claims alleged in the  FRCP Rule 7(a)(1) Complaint and Pleadings (d/e 1) are dismissed with prejudice.  The state law claims are dismissed without prejudice for lack of subject matter jurisdiction.  The request for leave to re-plead is denied.  All pending motions are denied as moot.  This case is closed.

ENTERED this 18th day of August, 2010

s/ Michael P. McCuskey
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

15